**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GINA M. WHITE,** | : |
| **Plaintiff** | : **CIVIL ACTION NO. 1:06-1495** |
| v. | : |
| | : **(CONNER, D.J.)** |
| | : **(MANNION, M.J.)** |
| **MICHAEL J. ASTRUE**[1], | |
| **Commissioner of Social** | : |
| **Security,** | |
| | : |
| **Defendant** | |
| | : |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision to deny the plaintiff's claim for Social Security Disability Insurance Benefits, ("D.I.B."), and Supplemental Security Income ("S.S.I.") under Titles II and XVI of the Social Security Act, ("Act"), respectively. 42 U.S.C. §§401-433, 1381-1383f.

**I. Procedural Background**

The plaintiff protectively filed applications for D.I.B. and S.S.I. on November 20, 2003, alleging disability since July 26, 2001, due to a herniated disc in her neck, carpal tunnel syndrome, fibromyalgia, and arthritis. (TR. 47-

---

[1]Michael J. Astrue became the Commissioner of Social Security effective February 12, 2007. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. §405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

49, 65, 429-30 ).  The state agency denied the plaintiff's applications initially on April 6, 2004.  (TR. 29, 433).  The plaintiff requested a hearing on June 3, 2004, and one was held before an administrative law judge, ("A.L.J."), on January 19, 2006, at which the plaintiff was represented by counsel.  (TR. 452-79).  In addition to the plaintiff's testimony, the A.L.J. heard the testimony of Kristin Sagliocco, an impartial vocational expert. On February 16, 2006, the A.L.J. issued an unfavorable decision.  (TR. 16-22).

The plaintiff requested review of the A.L.J.'s decision.  (TR. 12).  On May 31, 2006, the Appeals Council denied the request for review.  (TR. 8-11). Thus, the A.L.J.'s decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Currently pending is the plaintiff's pro se appeal of the Commissioner's decision, filed on August 1, 2006.  (Doc. No. 1).

**II. Disability Determination Process**

A five-step process is required to determine if an applicant is disabled under the Act.  The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work.  20 C.F.R. §§404.1520, 416.920.

The instant decision was ultimately decided at the fifth step of the process, when the A.L.J. concluded that the plaintiff was not disabled because she could perform a limited range of sedentary work activity.   (TR. 16-22).

**III.  The A.L.J.'s Decision**

Using the above-outlined procedure, the A.L.J. found that the plaintiff met the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Act through September 30, 2005; the plaintiff has not engaged in substantial gainful activity since July 26, 2001, her alleged onset date of disability; the plaintiff has the following severe impairments: degenerative disc disease of the lumbar and thoracic spines with a small cervical disc herniation, but no spinal stenosis or nerve root impingement; the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Regulations No. 4; the plaintiff retains the residual functional capacity to lift and carry up to ten pounds, occasionally, and to lift and carry items weighing two or three pounds, in a job which would permit her to change her position from being seated to standing, at her option, at approximately twenty to thirty minutes intervals; the plaintiff is unable to perform any of her past relevant work; the plaintiff was born on March 9, 1968, and was thirty-three years old on the alleged disability onset date, which is defined as a younger individual age eighteen to forty-four; the plaintiff has had

a formal high school education, as well as additional training as a cosmetologist and is able to communicate in English; transferability of job skills is not material to the determination of disability due to the plaintiff's age; considering the plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform; and the plaintiff had not been under a "disability," as defined in the Act, from July 26, 2001, through the date of the decision. (TR. 18-21).

## IV. Evidence of Record

The plaintiff was thirty-seven years old, a "younger" individual under the Act, at the time of the A.L.J.'s decision. 20 C.F.R. §§404.1563, 416.963. She has a high school education with additional training as a cosmetologist, and past relevant work experience as a cosmetologist.

The plaintiff has alleged disability since July 26, 2001. The medical evidence of record, as summarized by the parties and the A.L.J., establishes that the plaintiff underwent MRI testing of her lumbar and thoracic spine on December 10, 2001, which revealed no evidence of disc herniation or spinal stenosis, and no other significant abnormality. (TR. 125-26).

Based upon her complaints of carpal tunnel syndrome symptoms, the plaintiff subsequently underwent EMG and nerve conduction studies on August 13, 2002. These were reported to be normal. (TR. 132).

The plaintiff treated with Elizabeth Kamenar, M.D., on March 26, 2003, for complaints of pain. Dr. Kamenar noted that, although the plaintiff reported carpal tunnel syndrome symptoms, her February 20, 2003, EMG was normal. Upon examination, the plaintiff had full muscle strength, 5/5, in her upper extremities. In addition, despite the plaintiff's reported history of cervical disc problems, Dr. Kamenar noted no evidence of cervical radiculopathy. (TR. 138).

In January 2004, the plaintiff began complaining of fatigue. She treated with John Callahan, M.D., a rheumatologist, on March 17, 2004, who diagnosed her with "malaise and fatigue, NOS." (TR. 325).

On March 11, 2004, a state agency physician reviewed the medical evidence of record. In doing so, the consultant noted a primary diagnosis of fibromyalgia, a secondary diagnosis of cervicalgia, and an "other alleged impairment" of "CTS[2]." Considering the medical evidence of record, the consultant found that the plaintiff was partially credible with respect to her subjective complaints of pain. With respect to functional capacity, the consultant opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently; she could stand, walk and sit for six hours; perform unlimited pushing and/or pulling of hand or foot controls; and had no manipulative or postural limitations. (TR. 244-50).

---

[2]"CTS" is a common medical abbreviation for carpel tunnel syndrome. Neil M. Davis, Medical Abbreviations:8600, 45 (6th ed. 1993).

In June 2004, the plaintiff complained of headaches, for which she underwent a CT scan on June 8, 2004. The scan was noted to be normal. (TR. 302, 322).

On December 30, 2004, William J. Krywicki, M.D., noted that the plaintiff's EMG studies failed to show carpal tunnel syndrome. Upon examination, the plaintiff was noted to have weak grip bilaterally; full range of motion in her wrists; no tenderness in the carpal canal, but over the carpi radialis; and some tenderness on both medial and lateral epicondyles. The plaintiff was noted to describe symptoms consistent with fibromyalgia. (TR. 339-40).

The plaintiff underwent an MRI on September 21, 2005, which showed minimal degenerative disc disease at L4-L5 and no significant canal stenosis. (TR. 414).

At the hearing before the A.L.J., the plaintiff testified that her inability to sleep due to back pain kept her from working. (TR. 458). The plaintiff indicated that her back problems began in 1992, and that neck surgery was recommended to her. Otherwise, she testified that doctors told her that there was nothing they could do for her. (TR. 460, 463, 468). The plaintiff testified that nerve conduction studies revealed no evidence of carpal tunnel syndrome, and that CT scans were unremarkable. (TR. 460, 467).

With respect to functional capacity, the plaintiff testified that she can lift five pounds; walk, but not for long; and that standing was better than sitting.

6

(TR. 465). The plaintiff indicated that she takes care of her four year old son, whom she home-schools. (TR. 460, 471).

The A.L.J. also heard testimony from a vocational expert. The A.L.J. posed the following hypothetical:

> Let's assume that the hypothetical claimant would need some flexibility in terms of her sitting, standing and walking during the course of the given work day. Let's assume she would need this flexibility, say every 20 to 30 minutes. But, if, if having the ability to change your position at those intervals in addition to normal breaks and lunch periods, let's assume she could sustain what would be considered a full work day. Now, from a non-exertional standpoint, our, our claimant is under treatment for depression. I want you to assume, however, that in terms of overall limitations, she at times may have some moderate degree of limitation in dealing with jobs that would be highly complex or detailed in nature, but there would be no serious impediment in terms of a job which would involve, really, a simple 1-2 step type process. So, she could understand, remember and carry out simple instructions, make simple work-related decisions. Our hypothetical claimant is able to adequately relate to supervisors, co-workers, the public itself, to change in a, in a routine work setting and to handle herself appropriately under usual work situations. In terms of the hands, our claimant has some difficulty with the use of her dominant right hand. But, for this hypothetical question, let's assume she still maintains the use of the hand for activities, which would involve simple grasping, and gross manipulation.

(TR. 476-77). Based upon this hypothetical, the vocational expert testified that the individual could perform sedentary jobs in the national economy, such as a visual inspector, sorter, and packer. (TR. 477).

**V.   Discussion**

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211, 1213 (3rd Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In her appeal, the plaintiff initially indicates, without further explanation, that she disagrees with "paragraph 1[3]" of the A.L.J.'s decision. Paragraph one of the A.L.J.'s decision simply establishes the period through which the plaintiff was covered for purposes of her D.I.B. application. (TR. 18). The records support the A.L.J.'s finding of coverage through September 2005. (TR. 51). Therefore, to the extent that the plaintiff challenges this finding, her appeal should be denied.

Next, the plaintiff indicates that she disagrees with "paragraph 3" of the A.L.J.'s decision. In this paragraph, the A.L.J. lists what he has found to be the plaintiff's severe impairments. The plaintiff argues that the A.L.J. erred in not listing fibromyalgia as one of her severe impairments, which she has claimed as a basis of disability.

In reviewing the A.L.J.'s decision, while he did not name fibromyalgia among the plaintiff's listed severe impairments under this section, it is clear that the A.L.J. did consider this impairment and the plaintiff's limitations with respect thereto. To this extent, the A.L.J. accepted and adopted the report of the state agency consultant which listed the plaintiff's primary diagnosis as fibromyalgia and considered the plaintiff's residual functional capacity with respect to that impairment, as well as her cervicalgia and carpal tunnel

---

[3] Based upon the contents of the plaintiff's filing, the court presumes the plaintiff is referring to the numbered paragraphs of the A.L.J.'s decision.

syndrome.  (TR. 20, 244-50).  Therefore, the court finds that the A.L.J.'s failure to specifically list fibromyalgia as one of the plaintiff's severe impairments does not render his opinion unsupported by substantial evidence.

Next, the plaintiff challenges the A.L.J.'s finding that her subjective complaints were not entirely credible.

With respect to subjective complaints, the regulations require objective clinical signs and laboratory findings which demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§404.1529(b), 416.929(b). If the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the regulations then require the A.L.J. to evaluate their intensity and persistence and their effect on the claimant's capacity to work in light of the entire record. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). The Third Circuit has indicated that "[t]his obviously requires the administrative law judge to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181, F.3d 358, 362 (3d Cir. 1999). Where the A.L.J.'s credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the A.L.J. concluded that the plaintiff's subjective complaints were not entirely credible in light of the objective medical evidence contained in the

10

record, as well as the plaintiff's own testimony with respect to her daily activities, and the opinion evidence of the state agency physician, who opined the plaintiff could perform a range of light work activity.  Moreover, despite adopting the report of the state agency consultant and finding that the plaintiff's subjective complaints were not entirely credible, the A.L.J. did limit the plaintiff to a more restricted range of sedentary work activity, indicating that he did give the plaintiff's subjective complaints consideration.  Therefore, the plaintiff's appeal should be denied to the extent that she argues that the A.L.J. improperly found her subjective complaints to be not totally credible.

Finally, the plaintiff has attached to her appeal an opinion rendered by Allen J. Togut, M.D., on April 11, 2006, in which Dr. Togut opines that the plaintiff is totally disabled for any gainful employment. (Doc. No. 1, Attachment). The plaintiff argues that this opinion establishes that she has been misdiagnosed over the years and that she suffers from neurogenic thoracic outlet syndrome, which renders her totally disabled.

Dr. Togut's opinion was also submitted to the Appeals Council in conjunction with the plaintiff's request for review of the A.L.J.'s decision.  The Appeals Council considered the opinion and determined that it did not provide a basis for changing the A.L.J.'s decision.  (TR. 7-9).

Because the report of Dr. Togut was not before the A.L.J., it cannot be used to argue that the A.L.J.'s decision was not supported by substantial evidence.  Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991).  Moreover, to

11

the extent that the plaintiff is seeking remand claiming that the report is new and material evidence, the standard for a remand for new trial is based upon 42 U.S.C. §405(g), which provides in pertinent part:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). In Szubak v. Sec'y of Health and Human Services, 745 F.2d 831 (3d Cir. 1984), the Third Circuit elaborated on this standard. The Court stated that the evidence "must first be 'new' and not merely cumulative of what is already in the record." 745 F.2d at 833. It must also be material, meaning that it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Id. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id.

The Court of Appeals for the Third Circuit also addressed the issue of new evidence in a disability case in Matthews v. Apfel, 239 F.3d 589 (3rd Cir. 2001). There, the Court held that when new evidence is presented to the Appeals Council, that was not before the A.L.J., the district court could remand the matter to the A.L.J. only if the evidence is new and material and

12

there was good cause shown for the evidence not to have been presented to the A.L.J. Id. at 594. The Matthews court made clear that remand for consideration of new evidence is not a light matter. The Court warned that "[i]f we would order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the A.L.J. in order to preserve a reason for remand." Id. at 595.

Here, while the report submitted by the plaintiff is "new" in that it was not generated until after the decision of the A.L.J., there is no indication that it is material because the regulations provide that an opinion that a claimant is disabled, without more, is not entitled to any controlling weight, as the issue is reserved to the Commissioner. 20 C.F.R. §§404.1504, 404.1527(e)(1). Therefore, the fact that Dr. Togut opined that the plaintiff was totally disabled does not create a reasonable possibility that the A.L.J. would have changed his determination. Moreover, the plaintiff has not established good cause for not having sought the opinion of Dr. Togut until after the decision of the A.L.J. was issued. To the extent that the plaintiff believes that Dr. Togut's opinion establishes her claim for disability for a period after the A.L.J.'s decision, she can certainly file a new application for benefits on this basis.

## VI. RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED THAT:**

the plaintiff's appeal from the decision of the Commissioner of Social Security be **DENIED**.

        s/ *Malachy E. Mannion*
        **MALACHY E. MANNION**
        **United States Magistrate Judge**

**Date:** February 19, 2008

O:\shared\REPORTS\2006 Reports\06-1495.01.hhs.wpd